IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMMY R. DAVIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SUPERVALU, INC. d/b/a ACME<br>MARKETS, et al.,<br><br>　　　　　Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 13-414 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Robert J. Hensler, Esq.
ROBERT HENSLER, LLC
601 Haddon Avenue
Collingswood, NJ 08108
　　　Attorney for Plaintiff Tammy R. Davis

Andrew John Shapren, Esq.
BUCHANAN, INGERSOLL & ROONEY, PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
　　　Attorney for Defendants Supervalu, Inc. and Acme Markets,
　　　Inc.

**SIMANDLE, Chief Judge:**

**I.　INTRODUCTION**

　　　This matter comes before the Court on a motion for summary
judgment by Defendants Supervalu, Inc. and Acme Markets, Inc.
[Docket Item 34.] In this action, Plaintiff Tammy Davis, alleges
that after 28 years of employment at Acme Markets, she was fired
on the basis of her age in violation of the New Jersey Law

Against Discrimination. Defendants contend that Plaintiff was terminated for violating Acme's Honesty and Accuracy Policy after she allowed a customer to leave the store without paying for an item. Defendants seek summary judgment on the grounds that Plaintiff is unable to show that she was replaced by a younger employee and that she cannot show that Defendants' purported reason for terminating her employment is pretext.

For the reasons discussed below, the Court will grant Defendants' motion for summary judgment.

## II.   BACKGROUND

### A. Facts

Acme Markets, Inc. ("Acme") operates retail grocery stores and pharmacies. (Def. Statement of Material Facts ("SMF") [Docket Item 34-2] ¶ 1.) Supervalu was Acme's parent company from June, 2006 to March, 2013. (Id. ¶ 2.) Plaintiff Tammy Davis was employed by Acme from April, 1984 until Acme terminated her employment effective January 12, 2012. (Id. ¶ 3.) At the time of her termination, Plaintiff was 46 years-old and had worked for Acme for nearly 28 years. (Id. ¶ 4.) Plaintiff worked at various Acme stores in New Jersey performing duties as a cashier and in the bakery department. (Id. ¶ 5.) At the time of her termination, Davis worked as a cashier at Acme's Mount Holly, New Jersey store. (Id. ¶ 6.) Throughout her employment Davis was

a member of the United Food and Commercial Workers Local 1360

("the Union"). (Id. ¶ 7.)

Acme's Store Work Rules contain a section entitled "Honesty

and Accuracy." This section provides as follows:

Honesty and Accuracy
Each associate must follow Acme policies and procedures
concerning the handling of cash, food stamps, coupons and
any other valuables. Associates involved in any acts of
dishonesty, including those described below, will subject
themselves to termination, no matter what is later claimed
to have been the intent. They may also subject themselves
to possible arrest and prosecution.
1. Removing or attempting to remove from the store any
Company property or merchandise without full payment and
receipt.
2. Consuming or using merchandise on Company property
without first paying the correct price for it and retaining
the receipt.
3. Failing to record sales properly on the cash register at
the time of sale.
4. Theft of cash or any substitute for cash, for example,
food stamps, WIC checks, credit cards, debit cards, etc.,
or any Company property.
5. Engaging in coupon fraud or refund misappropriation.
6. Damaging merchandise or equipment or allowing someone
else to do so, discarding damaged merchandise without
authorization, and/or failure to report damage to the Store
Manager.
7. Checking out your own purchase or the purchase of a
relative or a common member of a household.
8. False or improper receiving of merchandise, such as
falsification of receiving records, receiving less
merchandise than the amount listed, etc.
9. Failing to charge all customers and associate shoppers
the correct prices and give accurate weights on all goods.
No discounting or price reduction will be permitted except
as authorized by the Store Manager or someone designated by
the Store Manager.
10. Conspiring with another associate, salesperson,
delivery driver or customer to do any of the above.
11. Falsification of information on any application, claim,
record or report, written or verbal.

(Ex. 1 to Davis Dep. [Docket Item 34-5.])[1] Acme's Company Retail
Policies Addendum contains nearly identical policies pertaining
to "Honesty and Accuracy." (SMF ¶ 11.)

Plaintiff initiated this action to challenge Acme's
termination of her employment. (Id. ¶ 13.) On December 30, 2011,
an Acme customer complained at the customer service desk that
Plaintiff had allowed the customer in front of him to leave
without paying. (Declaration of Nicholas Miceli ("Miceli Decl.")
[Docket Item 34-6] ¶ 3.) Minutes later, Stephanie, the store's
front-end manager, approached Plaintiff to inform her of the
complaint and asked Plaintiff to produce the receipt, which she
did. (Davis Dep. [Docket Item 34-5] 26:20-27:23.) After
receiving the complaint, Acme conducted an investigation. Acme
Loss Prevention Manager Nicholas Miceli was the lead
investigator and he prepared an investigation report. (Miceli
Decl. ¶ 5.) Miceli's report notes that the complaint was first
investigated by Acme Loss Prevention Specialist Melvin
Singleton, who "pulled the log" and found that "the order was
not voided and had been paid for with a master card." (Ex. 2 to
Miceli Decl. [Docket Item 34-6.]) However, Acme Loss Prevent
Manager Mike Porte "felt that the matter was not looked into
thoroughly enough" and asked Miceli to investigate further.

---

[1] Defendants inaccurately quote this document in their 56.1
statement.

After reviewing a video of the transaction and a copy of the receipt, Miceli determined that seven items were scanned, but only six items were paid for. (Id.) The receipt showed a voided item for $7.49, which was a box of Aleve tablets. (Id.)

On January 6, 2012, Miceli met with Plaintiff to interview her about the transaction at issue. (Davis Dep. 38:4-7.) Plaintiff explained that she was unaware that she had voided any items. (Id. 35:1-7.) Miceli asked Plaintiff to recreate her actions (id. 35:15-18) and Davis demonstrated how to complete a credit card transaction. (Ex. 2 to Miceli Decl.) Miceli's report notes that, after swiping his personal credit card for the demonstration, Plaintiff hit two keys and the receipt printed. (Id.) Plaintiff did not push the toggle key repeatedly as Miceli contends she did on the video. (Id.) Miceli then asked the Acme office coordinator to put the register in test mode and they scanned seven items. (Id.) Miceli asked the office coordinator to void the first item scanned, which they did by hitting to the toggle key six times, then the void key. (Id.) Miceli notes that these key strokes are consistent with what he observed in the video of the transaction at issue. (Id.) Miceli admits that he was unable to see what was on the register screen during his review of the video. (Miceli Dep. 70:17-20.) Miceli's report also notes that Plaintiff maintained throughout that she must

have hit a wrong key by mistake due to "the new POS system."[2] (Id.)

Also on January 6, 2012, after Miceli advised Acme Associate Relations Manager Laura Rober of his findings, Acme suspended Plaintiff for violating the Honesty and Accuracy Policy. (Miceli Decl. ¶ 6.) Acme terminated Davis' employment for violating the Honesty and Accuracy Policy effective January 12, 2012. (SMF ¶ 25.)

After Plaintiff was suspended, the Union filed a grievance with Acme for failing to show good cause for her termination under the collective bargaining agreement. (Davis Dep. 38:18-39:5.) A grievance meeting was held on January 17, 2012, at which Plaintiff and two Union representatives appeared. (Davis Dep. 39:20-40:9.) At the meeting, Plaintiff again asserted that she did not void the item intentionally. Instead, she stated, "I am human, and I made a mistake. If they got voided off, it was an honest mistake. I am human." (Id. 42:4-5.) During the grievance meeting, the Union representatives tried to recreate

---

[2] Defendants reject Plaintiff's contention that the item could have been voided by accident. Defendants also explain that there was only one issue with the new cash register system. The "cash" key on the new system is located in the same place as the "credit" key on the old system. Occasionally, a clerk would mistakenly hit the "cash" key to finalize the order of a customer using credit, thus finalizing the order, but failing to charge the credit card. (Miceli Dep. 35:18-36:18.) Defendants contend that this issue could not have caused Plaintiff to mistakenly void a single item as occurred in the transaction at issue.

the transaction, but according to Miceli, neither the representatives nor Plaintiff could do so in a manner that supported her assertion that voiding the item was a mistake. (Miceli Dep. 81:10-14; 110:5-17.) After the meeting, Rober and Acme Labor Relations Manager Joan Williams determined that Plaintiff's employment would remain terminated. (Declaration of Laura Rober ("Rober Decl.") [Docket Item 34-4] ¶ 7.) On February 1, 2012, the Union notified Plaintiff that it was withdrawing her grievance because it concluded that she would not be successful. (Davis Dep. 46:19-47:6.) Subsequently, Plaintiff was deemed eligible for unemployment benefits. (Ex. A-2 to Davis Cert. [Docket Item 43.]) Acme appealed, but the Appeal Tribunal rejected Acme's argument that Plaintiff was discharged for misconduct and upheld Plaintiff's eligibility for benefits. (Id.)

Acme contends that it did not replace Plaintiff after terminating her employment. (Kavanaugh Dep. 30:23-31:2.) Instead, her hours were distributed among numerous part-time clerks each week. (Id. 21:19-24.) Tim Kavanaugh, Store Director at the Mount Holly store, identified two individuals who received additional hours after Davis' termination, one younger and one older than Plaintiff. (Id. 29:16-31:17; see also Rober Decl. ¶ 14.)

From January, 2008 to January, 2013, grievances were filed on behalf of 193 employees that Acme disciplined for violating the Honesty and Accuracy Policy. (Rober Decl. ¶ 11.) Acme terminated the employment of 184 of these 193 employees. (Id. ¶ 12.) Of the 184 employees who were terminated, 141 were under forty years old. (Id.) In addition to those who filed grievances, Acme terminated the employment of 300 other employees for violating the Honesty and Accuracy Policy during this same period. (Id. ¶ 13.)

Plaintiff asserts that, after the initial investigation found no wrongdoing, Acme used Miceli to "target" Plaintiff and take the opportunity to "get rid of an older cashier, making a significant hourly rate, with a full package of benefits." (Davis Cert. ¶ 20.) Plaintiff notes that a co-worker in the meat department, Betsy Bartum, told her that Plaintiff had a "target on her back." (Id. ¶ 29.) Plaintiff maintains that a problem with the new computerized cash register system allowed the customer to leave without paying for the Aleve tablets and that Acme had been experiencing problems with the new system, which had only been in place for roughly six months at the time. (Id. ¶ 21.) Plaintiff recalls numerous occasions when the system would not allow her to finalize payment and she knows that other cashiers experienced similar problems. (Id. ¶ 24.) As for her replacement, Plaintiff recalls the store training a 17 or 18

year-old employee named Brittany shortly before her termination.
(Id. ¶ 33.) Plaintiff continued to shop at the store following
her termination and observed younger cashiers working the hours
she would have worked, including "at least one 'new face.'" (Id.
¶ 34.) After Plaintiff was terminated, she told her family that
she was fired because of her gender. (Davis Dep. 11:2-22.)
Plaintiff has submitted numerous affidavits from friends and
family attesting to Plaintiff's love for her job with Defendants
and her honesty and integrity. (Pl. Exs. B-H [Docket Item 44.])

The customer involved in the transaction at issue, Victor
Boland, was unaware that any item failed to scan properly or was
voided. (Certification of Victor Boland ("Boland Cert.") [Docket
Item 43] ¶ 7.) After learning that Plaintiff was suspended,
Boland returned to the store with his receipt and offered to pay
for the omitted item, but Kavanaugh rejected payment and said
the situation was out of his hands. (Id. ¶ 15.) Acme never
contacted Boland as part of its investigation. (Id. ¶ 17.)

**B. Procedural history**

Plaintiff initially filed this action on December 10, 2012
in the Superior Court of New Jersey, Burlington County, Law
Division, docket number 3346-12. Defendants filed a notice of
removal on January 22, 2013, invoking the Court's diversity
jurisdiction. [Docket Item 1.] Plaintiff's initial Complaint
contained four counts: (1) age discrimination in violation of

NJLAD; (2) retaliation for filing a workers' compensation claim in violation of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1 et seq., and NJLAD; and (3) common law wrongful discharge in violation of public policy. Count four asserted these same claims against fictitious parties. Defendants filed a motion to dismiss Counts I and II, which the Court granted on April 18, 2013. [Docket Items 13 & 14.]

Subsequently, Plaintiff filed a motion to amend which attempted to replead her claim that her termination was in retaliation for filing a workers' compensation claim. [Docket Item 17.] The Court denied Plaintiff's motion [Docket Item 27] and permitted Plaintiff to file the operative Amended Complaint, which asserts only a claim for age discrimination under NJLAD.[3] [Docket Item 28.]

Defendants filed the instant motion for summary judgment on June 30, 2014. [Docket Item 34.] Plaintiff filed opposition [Docket Items 41 & 42] and Defendants filed a reply [Docket Item 60].

**III. STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[3] The Court also permitted Plaintiff to name Acme Markets, Inc. as a separate defendant in her Amended Complaint.

P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Essentially, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

Defendants argue that Plaintiff cannot establish a prima facie showing of age discrimination under NJLAD because she was not replaced by a person sufficiently younger to permit an inference of discrimination. Defendants contend that, in fact, Plaintiff was not replaced at all, but instead, her hours were distributed to various part-time employees, both older and younger than Plaintiff. Defendants also assert that, even if Plaintiff could establish a prima facie showing of age discrimination, she cannot show that Defendants' reason for terminating her employment was pretext.

Plaintiff contends that there are disputed facts as to whether Plaintiff was replaced by a younger employee and that

Defendants terminated Plaintiff under false pretenses to reduce labor costs. Moreover, Plaintiff argues that Defendants' stated reason for her termination is pretext because Plaintiff was fired after 28 years of service without incident for making a mistake caused by a new cash register system.

## A. Plaintiff cannot establish a prima facie case of age discrimination

The Court first considers whether Plaintiff can establish a prima facie showing of age discrimination under the NJLAD.

Under N.J.S.A. § 10:5-12, it is an unlawful employment practice, "[f]or an employer . . . to refuse to hire or employ or to bar or to discharge or require to retire" because of an individual's age. N.J.S.A. § 10:5-12(a).

As a result of the inherent "difficulty of proving discriminatory intent," the New Jersey Supreme Court adopted the McDonnell Douglas burden-shifting framework to analyze whether an employer engaged in unlawful discrimination when there is only circumstantial evidence of such discrimination. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446–47 (2005); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under the McDonnell Douglas test:

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant then must show a legitimate non-discriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to

show that defendant's stated reason was merely a pretext or discriminatory in its application.

Dixon v. Rutgers, The State Univ. of N.J., 110 N.J. 432, 442 (1988).

A plaintiff's evidentiary burden in establishing a prima facie case is "rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination *could* be a reason for the employer's action." Zive, 182 N.J. at 447 (quoting Marzano v. Computer Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)). However, if an employer comes forward with admissible evidence of a legitimate, non-discriminatory reason for its adverse employment action, the presumption of discrimination disappears and the burden of production shifts back to the plaintiff. Bergen Commer. Bank v. Sisler, 157 N.J. 188, 211 (1999). The plaintiff employee must then show by a preponderance of the evidence that the reason given by the employer was pretext for discrimination by demonstrating "that the employer's reason was both false and motivated by discriminatory intent." Henry v. New Jersey Dept. of Human Services, 204 N.J. 320, 331 (2010). "Although the burden of production shifts throughout the process, the employee at all phases retains the burden of proof that the adverse employment

action was caused by purposeful or intentional discrimination."
Sisler, 157 N.J. at 211.

To establish a *prima facie* case of age discrimination under
federal law, a plaintiff must show that he or she (1) was a
member of a protected class (i.e., he or she was forty years of
age or older); (2) was qualified for the position at issue; (3)
suffered an adverse employment action; and (4) was replaced by
someone sufficiently younger, raising an inference of age
discrimination.[4] Anderson v. Consol. Rail Corp., 297 F.3d 242,
249 (3d Cir. 2002).

It is undisputed that Plaintiff satisfies the first three
prongs of the prima facie showing. Defendants only argue that
Plaintiff has failed to show that she was replaced by someone
sufficiently younger such that raises an inference of age
discrimination.

Defendants rely on Young v. Hobart W. Grp., 385 N.J. Super.
448 (App. Div. 2005) and Horan v. Verizon New Jersey Inc., A-

---

[4] In cases involving a reduction-in-force, i.e., a situation in
which plaintiff was not replaced by another employee, but
instead was terminated in the context of a company-wide
reduction in staffing, the Third Circuit has recognized that
"the fourth element is satisfied by showing that the employer
retained a 'sufficiently younger' employee." Showalter v. Univ.
of Pittsburgh Med. Ctr., 190 F.3d 231, 235 (3d Cir. 1999). In
addition, "to present a prima facie case raising an inference of
age discrimination in a reduction in force situation, the
plaintiff must show, as part of the fourth element, that the
employer retained someone similarly situated to him who was
sufficiently younger." Anderson, 297 F.3d at 250.

1643-12T2, 2014 WL 1672366, at *7 (N.J. Super. Ct. App. Div. Apr. 29, 2014), for the proposition that an inference of age discrimination does not arise where a terminated employee's work is distributed to younger employees. In Young, the Appellate Division noted that "[t]he focal question is not necessarily how old or young the claimant or his replacement was, but rather whether the claimant's age, in any significant way, 'made a difference' in the treatment he was accorded by his employer." Young, 385 N.J. Super. at 459 (quoting Petrusky v. Maxfli Dunlop Sports Corp., 342 N.J. Super. 77, 82 (App. Div. 2001)). The court then found that plaintiff could not establish that her age played a significant role in her termination because the record demonstrated that plaintiff was terminated as a cost reduction measure, that no one was hired to replace her, and that her duties were assumed by other employees who previously reported to her. Young, 385 N.J. Super. at 459-60. As such, the court held that plaintiff "cannot show either that she was replaced by someone sufficiently younger, or that 'age in any significant way made a difference' in the treatment she was accorded by her employer." Id. at 460. Similarly, in Horan, the Appellate Division concluded that "[t]he simple distribution of a terminated employee's work among existing employees, who may be younger, by itself, does not rise to the level of a prima facie

showing that the discharge was because of age, and thus unlawful." <u>Horan</u>, 2014 WL 1672366, at *7.

Defendants also note similar conclusions by federal courts in the Third Circuit. <u>See</u> <u>Kaluza v. PNC Bank</u>, Civ. 11-1646, 2013 WL 1830933 (W.D. Pa. Mar. 11, 2013) <u>report and recommendation adopted,</u> Civ. 11-1646, 2013 WL 1826432, at *7 (W.D. Pa. Apr. 30, 2013) ("A redistribution of duties among current employees does not, without more, constitute a 'replacement' of a former employee[,]" and "[t]he fact that some of the employees that received some of [plaintiff's] former duties were younger does not demonstrate discrimination under the ADEA."); <u>Millard v. Corestates Fin. Corp.</u>, Civ. 98-5028, 2001 WL 1175135, at *3 (E.D. Pa. July 30, 2001) (finding plaintiff's allegation that two existing employees assumed the majority of plaintiff's duties after his termination "does not equate to 'replacement' for purposes of the *prima facie* age discrimination test, and therefore, Plaintiff is unable to meet the fourth prong of the traditional age discrimination test").

In the present case, as in those cited above, Plaintiff is unable to satisfy the fourth prong of the prima facie showing. First, evidence that Plaintiff's work was distributed to younger employees is insufficient on its own to show that Plaintiff was replaced and to raise an inference of age discrimination. Indeed, Plaintiff's work was distributed to both younger and

16

older employees. A reasonable jury could not be persuaded by speculation that Plaintiff may have been replaced by a bagger named Brittany and Plaintiff's vague recollections of seeing younger cashiers with less seniority working hours she used to work. Moreover, Defendants have provided documentation showing that the only employee named Brittany at the Mount Holly store did not received a significant increase in her hours after Plaintiff's termination. (Supplemental Declaration of Laura Rober [Docket Item 60-4] ¶ 6.) Second, Plaintiff has not identified any other evidence in the record sufficient to raise an inference of age discrimination. Plaintiff emphasizes that the employees who assumed Plaintiff's hours following her termination likely allowed Defendants to save money on labor costs because Plaintiff earned a significant salary and benefits after her 28 years of service. However, Kavanaugh testified that Plaintiff's hourly rate of $17.50 was actually less than the average earning rate in the store and that Plaintiff's termination may have been more costly to Defendants because it may have required Acme to permit more overtime to cover Plaintiff's hours. (Kavanaugh 20:16-24; 31:12-24.) Moreover, cost reduction and employee's salaries are permissible considerations in employment decisions. See Lovett v. Flemington-Raritan Reg'l Bd. of Educ., A-0991-12T1, 2013 WL 5925615, at *9 (N.J. Super. Ct. App. Div. Nov. 6, 2013) ("New

Jersey courts have recognized cost reduction measures and employees' salaries as legitimate considerations in making termination decisions."). Even when viewed most favorably to Plaintiff, there is nothing in the record from which a reasonable jury could conclude that Plaintiff's age was a factor in Defendants' decision to terminate her employment. Moreover, the fact that Plaintiff was deemed eligible for unemployment benefits is informative, but not entitled to collateral estoppel effect.[5] Although the Appeal Tribunal found that Plaintiff was not discharged for misconduct connected to work, N.J.S.A. § 43:21-5(b) requires a showing of intent or willful disregard, which Defendants' Honesty and Accuracy Policy does not. Therefore, the Court finds that Plaintiff cannot establish a prima facie showing of age discrimination under NJLAD.

### B. Plaintiff cannot show that Defendants' legitimate, nondiscriminatory reason is pretext

Even if Plaintiff could establish a prima facie showing of age discrimination, she is unable to show that Defendants' reason for terminating her employment is pretext.

Defendants assert that Plaintiff's employment was terminated for violating the store's Honesty and Accuracy Policy. There is no question that Defendants' have satisfied

---

[5] The New Jersey Supreme Court has held that unemployment compensation determinations are not entitled to collateral estoppel effect. Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 529 (2006).

their burden of articulating a legitimate, nondiscriminatory reason for Plaintiff's termination. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). To defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764. Pretext "is not demonstrated by showing simply that the employer was mistaken . . . . Instead, the record is examined for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995).

Plaintiff is unable to show that Defendants' reason for terminating her employment is pretext. Defendants investigated a claim and concluded that Plaintiff allowed a customer to leave with an item without proper payment. During the initial investigation by Miceli and at the grievance hearing where Plaintiff was represented by two Union representatives, Plaintiff was given an opportunity to recreate the transaction at issue. Miceli and Acme's labor relations personnel determined

that Plaintiff could not do so in a manner that supported her assertion that she made an honest mistake. Instead, Defendants, after granting Plaintiff an opportunity to explain her conduct, concluded that Plaintiff's actions on the video were consistent with intentionally voiding the first item scanned and allowing the customer to leave without payment. Notably, the Union ultimately informed Plaintiff that it was withdrawing her grievance because she was unlikely to be successful in challenging her termination. Defendants have submitted evidence showing that Acme uniformly and consistently enforces its Honesty and Accuracy Policy and that roughly 75 percent of the individuals who filed grievances after being accused of violating the Policy were under age forty. Even if Plaintiff made an honest mistake as she contends, she still could be found in violation of the Honesty and Accuracy Policy because the Policy does not require intent. Moreover, it is not enough to show that Plaintiff indeed made a mistake or that Defendants erroneously concluded that she intentionally allowed a customer to leave without paying. See Fuentes, 32 F.3d at 765 ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). Plaintiff

has presented no additional evidence of age-based animus or more favorable treatment of younger employees that would allow a reasonable jury to believe age was the real reason for Plaintiff's termination.[6] Plaintiff's impressive tenure with Defendants is insufficient on its own to raise an inference of age discrimination. See Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993) ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"). However unfortunate the result for an employee with an otherwise impeccable work record over a 28-year period, Plaintiff has not submitted any evidence from which a reasonable jury could find that Defendants' legitimate non-discriminatory reason is pretext.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. An accompanying Order will be entered.

October 16, 2014                s/ Jerome B. Simandle
Date                          JEROME B. SIMANDLE
                             Chief U.S. District Judge

---

[6] Plaintiff's reliance on Buchholz v. Victor Printing, Inc., 877 F. Supp. 2d 180, 191 (D.N.J. 2012) is misplaced because Plaintiff in the present case has not shown any inconsistency in Defendants' reason for terminating her employment.